HELVERING, COMMISSIONER OF INTERNAL
REVENUE, *v.* NEWPORT CO.

No. 515. Argued February 15, 16, 1934.—Decided March 5, 1934.

*Mr. Erwin N. Griswold,* with whom *Solicitor General Biggs* and *Messrs. Sewall Key* and *J. P. Jackson* were on the brief, for petitioner.

*Mr. Charles F. Fawsett,* with whom *Mr. Richard S. Doyle* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

This case comes here on certiorari to review a judgment of the Court of Appeals for the Seventh Circuit, 65 F. (2d) 925, affirming a decision of the Board of Tax Appeals, that a deficiency assessment against respondent as transferee of the assets of the Newport Chemical Works, Inc., for 1917 income and profits taxes of the transferor was barred by the statute of limitations.

In 1919 the Chemical Works, a Maine corporation, after it had filed its tax return for 1917, transferred all its assets to the respondent, a Delaware corporation, which, as consideration for the transfer, issued its stock to the stockholders of the transferor and assumed all liabilities of the transferor. On March 1, 1920, the Supreme Court of Maine entered a decree which purported to dissolve the Chemical Works. The statutory period of limitation for the assessment and collection of the 1917 taxes, as the government concedes, expired on April 1, 1923, five years after the return for that year had been filed. Whether this period was extended by waiver so as to include the date of deficiency assessment fixed by the Commissioner's sixty-day letter of March 14, 1927, depends on the validity and effect of several documents filed with the Commissioner by the Chemical Works or by respondent.

During the period from December 15, 1920, to November, 1926, six documents, asserted by the government to be waivers extending the time for assessment, were executed by the Chemical Works by an officer or its general counsel, and lodged with the Commissioner. On or about November 6, 1926, a further waiver extending the period

for assessment to December 31, 1927, executed by respondent by its president, was filed with the Commissioner.

The court below and the Board of Tax Appeals both held, as respondent argues here, that the period for assessment and collection of the tax, which had been indefinitely extended by the terms of the first waiver, was terminated and the assessment barred on April 1, 1924, by a departmental ruling (Mimeograph 3085, II-1 Cum. Bull. 174, April 11, 1923); that all the subsequent waivers, before that of November 6, 1926, were void because they were given by the Chemical Works, which had been previously dissolved; and that, as the assessment against the Chemical Works had thus been barred prior to the Revenue Act of 1926, the right to assess the respondent as transferee could not, under the provisions of that Act, be revived by respondent's waiver of November 6, 1926.

Several independent grounds are urged by the government to support the challenged deficiency assessment. The only one which we need now consider is that the waiver of November 6, 1926, unaided by the earlier ones, extended the time for the assessment against the respondent, as transferee of the Chemical Works, until its expiry date, December 31, 1927. Before that date the assessment had been made.

Respondent, as such transferee, became liable for any tax which might have been lawfully assessed against its transferor before the transfer, and § 280 (a) (1) of the Act of 1926 directs that such liability " shall . . . be assessed, collected and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed " by that Act. *Phillips* v. *Commissioner*, 283 U.S. 589. If, as respondent maintains and as the court below held, any assessment was barred before respondent's waiver of November 6, 1926, the effect of that waiver upon the right to assess respondent pursuant to § 280 must be determined by the Revenue Act of 1926.

The provisions of the Act applicable to limitations and waivers are found in §§ 277 and 278. Section 277 fixes the period of limitation, but § 278 (c) provides:

." Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon."

Had these provisions stood alone the waiver of November 6, 1926, if otherwise valid, would have extended the time for assessment to the specified date, December 31, 1927, even though it was made after the period for assessment had expired. There is nothing in § 278 (c) or related sections which requires that a waiver be given prior to the expiration of the statutory period, and this Court has uniformly held that, under the identical § 278 (c) of the 1924·Act, the defense of the statute of limitations may be waived by the taxpayer after, as well as before, the expiration of the statutory period. *McDonnell* v. *United States,* 288 U.S. 420; *Stange* v. *United States,* 282 U.S. 270; *Brown & Sons Lumber Co.* v. *Burnet,* 282 U.S. 283, 287; *Burnet* v. *Railway Equipment· Co.,* 282 U.S. 295, 298.

To avoid this conclusion here, respondent relies on § 1106 (a) of the Act of 1926, which provides that " The bar of the statute of limitations against the United States in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability; . . ." This section, it is said, indicates a Congressional intent that, once the liability of the taxpayer is extinguished, it should not be revived by waiver. The government argues that this attempted distinction between the defense of the bar of the statute of limitations and the defense that the liability has been extinguished is, at most, only formal and does not affect the application of § 278 (c); that a defense founded on a right which may

be waived by failure to plead it may likewise be waived by formal document authorized by statute. *Burnet* v. *Desmornes,* 226 U.S. 145; see *Atlantic Coast Line* v. *Burnette,* 239 U.S. 199, 200; *Finn* v. *United States,* 123 U.S. 227, 233; compare *Stange* v. *United States, supra.* But doubts as to the effect which Congress intended, if any, to be given to the quoted provision of § 1106 (a) in construing § 278 (c)[1] were removed by § 612 of the Revenue Act of 1928, which declared that § 1106 (a) was repealed as of February 26, 1926, its effective date. Congress thus indicated its intention that the section should be erased from the books as though it had never been enacted, so that § 278, like other surviving sections of the 1926 Act,

---

[1] The legislative history of § 1106 (a) shows that its purpose was not to prevent a taxpayer from voluntarily agreeing to pay a tax after the period of limitation had expired. It was proposed in order to avoid the effect of a decision of the Court of Claims in *Toxaway Mills* v. *United States,* 61 Ct. Cls. 363, 372, holding that if a tax had been collected after the running of the statute of limitations the taxpayer could not set up that fact as entitling him to recover, but could establish a right to a refund only by proving that there had been an overpayment of the tax, on the theory that the statute of limitations did not extinguish the liability but merely barred the remedy. As stated in the Conference Report on this section of the bill, H.Rep. 356, 69th Cong., 1st Sess., p. 55:
" This amendment is deemed advisable because of an opinion in a recent decision of the Court of Claims, *Toxaway Mills* v. *United States* . . . Obviously this section does not apply in the case of fraud or in the case of a waiver."
And see 67 Cong. Rec., Part IV, p. 3531. But in conference § 1106 (a) was qualified by the addition of a clause denying a right to a refund unless taxpayers had in fact overpaid the tax. See Conference Rep., H.Rep. 356, 69th Cong., 1st Sess., pp. 26, 55. Congress, in enacting these provisions, was thus concerned with refunds rather than assessments and obviously did not enact the provision for the purpose of rendering invalid waivers executed after the running of the statute. See also Sen. Rep. 960, 70th Cong., 1st Sess., p. 41; Report of Joint Committee on Internal Revenue Taxation, 70th Cong., 1st Sess., House Doc. No. 139, p. 16.

must be construed free of such restrictive influence, if any, as § 1106 (a) would otherwise impose. Thus it must be dealt with as was the identical section in the Act of 1924 which was before the Court in *Stange* v. *United States, supra.*[2]

---

[2] It is true that § 506 (a) of the Act of 1928 amended § 278 (c) of the Act of 1926 by providing for extension, by consent, of the time within which an assessment might be made only if the consent were given before the expiration of the period of limitation. But § 506 (b) further provided that any such consent, given after the expiration of the period of limitation, should be valid and effective according to its terms if entered into after the enactment of the Act of 1928 and before January 1, 1929. It was also provided, in § 506 (c), that " The amendments made by this section to the Revenue Act of 1926 shall not be construed as in any manner affecting the validity of waivers made prior to the enactment of this Act, which shall be determined in accordance with the law in existence at the time such waiver was filed." The application of subdivision (c) of § 506 is by its terms limited to amendments made by the section and it seems plain that it was intended to be a qualification of subdivision (a) and not a limitation upon § 612. Compare *United States* v. *Morrow*, 266 U.S. 531. Thus construed it prevents any retroactive operation of subdivision (a) by saving the effect of waivers already given although after the expiration of the period of limitation. That effect is to be determined by the application of the provisions of the Act of 1926, with § 1106 (a) eliminated as provided by § 612 of the Act of 1928. The declared purpose of § 506 was to preserve the Commissioner's rights to waivers filed under prior acts and to fix January 1, 1929, as the date of change from the old practice to the new. See H.Rep. 2, 70th Cong., 1st Sess., p. 29; Sen. Rep. 960, 70th Cong., 1st Sess., p. 36; Conference Rep., H.Rep. 1882, 70th Cong., 1st Sess., p. 21. If subdivision (c) were construed as a limitation upon § 612 it would nullify the operation of § .612, and would produce a " whimsical result." See *Commissioner* v. *Oswego & Syracuse R. Co.*, 62 F. (2d) 518, 520. For waivers executed after the period of limitation had run would be valid if filed prior to February 26, 1926, the effective date of the 1926 Act. Like waivers would be invalid if executed between February 26, 1926, and May 29, 1928, the effective date of the 1928 Act. But by § 506 (b), *supra*, they would be valid if executed between May 29, 1928 and January 1, 1929. Scope is given for the operation of § 612, see *Bernier* v. *Bernier*, 147 U.S. 242, 246, and

That Congress, with consent of the taxpayer, has power to reinstate his tax liability and to authorize assessment of the tax cannot be doubted. *Graham & Foster* v. *Goodcell,* 282 U.S. 409, 426; *Mascot Oil Co.* v. *United States,* 282 U.S. 434. The taxpayer cannot complain that Congress has availed itself of the consent which he has given, and cannot object that it did so by revival of the tax " liability," rather than by removing the bar of the statute as in *McDonnell* v. *United States, supra,* and *Stange* v. *United States, supra;* see *Wm. Danzer & Co.* v. *Gulf & S. I. R. Co.,* 268 U.S. 633, 636; *Home Insurance Co.* v. *Dick,* 281 U.S. 397, 409.

We have considered, but do not discuss respondent's arguments based on the construction of the waiver of November 6, 1926, which are without merit. We do not doubt that rightly construed the waiver conformed to the requirements of §§ 278 and 280 of the Act of 1926, and that by it respondent consented to the deficiency assessment.

*Reversed.*

incongruous results are avoided by treating § 1106 (a) as though it had never been a part of the 1926 Act, as § 612 directs. See *United States* v. *Katz,* 271 U.S. 354.